**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION**

| | | |
|---|---|---|
| SIERRA CLUB, | ) | |
| 85 Second Street, 2nd Floor | ) | |
| San Francisco, CA 94105 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Civil Action No. _____ |
| WISCONSIN POWER AND LIGHT | ) | |
| COMPANY, | ) | |
| 4902 N. Biltmore Lane | ) | |
| Madison, WI 53718-2132 | ) | |
| | ) | |
| Defendant. | ) | |

_____

## COMPLAINT
_____

Plaintiff, Sierra Club, by its undersigned attorneys, alleges as follows:

### INTRODUCTION

1.      This is a civil action for civil penalties, declaratory and injunctive relief, with costs and fees, under the Clean Air Act ("the Act" or "CAA"), 42 U.S.C. §§ 7401, *et seq*.

2.      Sierra Club seeks an order requiring the Defendant, Wisconsin Power And Light Company ("WPL"), to comply with the requirements of the Act at the Edgewater Generating Station ("EGS") power plant located along Lake Michigan, at 3739 South Lakeshore Drive, Sheboygan, Sheboygan County, Wisconsin, and which is owned, in part, by Defendant and is operated by Defendant.

3.      The EGS plant is a coal-fired power plant capable of generating about 700 megawatts (MW) of electricity, consisting of three boilers or units.  EGS Unit 3 was constructed

in approximately 1951 and is physically capable of generating approximately 60 MW. EGS Unit 4 was constructed in approximately 1969 and is physically capable of generating approximately 330 MW. EGS Unit 5 was constructed in approximately 1985 and is physically capable of generating approximately 430 MW. All three units at EGS fire predominately coal and each is larger than 250 million British thermal units per hour (MMBtu/hour).

4.    The EGS plant is a "fossil fuel-fired steam electric plant of more than 250 million British Thermal Units per hour heat input" as that term is used in 40 C.F.R. 52.21(b)(1)(1999), Wis. Admin. Code § NR 405.02(22)(a)1., Wis. Admin. Code § NR 408.02(21)(a)1. and 42 U.S.C. § 7479(1).

5.    The EGS boilers exhaust their product combustion gases and other pollutants through two stacks. EGS Units 3 and 4 exhaust through stack "S11," and EGS Unit 5 exhausts through stack "S12."

6.    The EGS plant has the "potential to emit," as that term is defined in Wis. Admin. Code §§ NR 405.02(25) 408.02(28) and 40 C.F.R. 52.21(b)(4)(1999), in excess of 100 tons per year of the following pollutants: carbon dioxide, nitrogen oxides, sulfur dioxide, carbon monoxide, and particulate matter.

7.    The EGS plant is a "major emitting facility," as that term is used in 42 U.S.C. § 7475(a).

8.    The EGS plant is a "major stationary source," as that term is used in 40 C.F.R. §§ 52.21(b)(1)(1999) and Wis. Admin. Code §§ NR 405.02(22) and 405.07(1) and a "major source" as that term is used in Wis. Admin. Code §§ NR 408.02(21) and 408.03.

2

9.     According to reports filed by Defendant, emissions from the EGS plant were as follows for 2008:

| Emissions | | | | | |
|---|---|---|---|---|---|
| Sulfur Dioxide (SO$_2$) | Nitrogen Oxides (NOx) | Sulfuric Acid (H$_2$SO$_4$) | Carbon Dioxide (CO2) | Hydrogen Chloride (HCl) | Mercury (Hg) |
| 13,448 tons | 2,961 tons | 46,493 pounds | 4,586,651 tons | 100,900 pounds | 295 pounds |

10.     According to the Wisconsin Department of Natural Resources, the EGS Unit 3 has the following potential to emit:

| Pollutant | Potential to Emit (TPY) |
|---|---|
| Particulate Matter | 192 |
| Sulfur Dioxide | 15,045 |
| Nitrogen Oxides | 2,067 |
| Carbon Monoxide | 384 |
| PM10 | 174 |

11.     According to the Wisconsin Department of Natural Resources, the EGS Unit 4 has the following potential to emit:

| Pollutant | Potential to Emit (TPY) |
|---|---|
| Particulate Matter | 665 |
| Sulfur Dioxide | 62,910 |
| Nitrogen Oxides | 6,801 |
| Carbon Monoxide | 1,608 |
| PM10 | 578 |

12.     According to the Wisconsin Department of Natural Resources, the EGS Unit 5 has the following potential to emit:

3

| Pollutant | Potential to Emit (TPY) |
|---|---|
| Particulate Matter | 623 |
| Sulfur Dioxide | 22,948 |
| Nitrogen Oxides | 4,208 |
| Carbon Monoxide | 6,433 |
| PM10 | 13 |

13.     As a result of combustion, the EGS boilers emit thousands of tons of carbon dioxide, nitrogen oxides, sulfur oxides, particulate matter and carbon monoxide each year. Those pollutants contribute to climate change, respiratory distress, cardiovascular disease, and premature mortality. Nitrogen oxides and sulfur oxides in the air also contribute to acid rain, which sterilizes lakes and damages property, crops and forests. The presence of those pollutants in the atmosphere is also associated with increased hospital admissions and emergency room visits.

14.     On one or more occasions, Defendant modified and thereafter operated the EGS Unit 4 boiler and, on information and belief, the other EGS boilers without first obtaining appropriate permits authorizing that construction, without meeting emission limits that are "best available control technology" or "lowest achievable emission rates" and without installing appropriate technology to control emissions of nitrogen oxides, sulfur dioxides, particulate matter, and other pollutants as required by the Act and its implementing regulations.

15.     As a result of Defendant's operation of the EGS plant in violation of the law and applicable permits and in absence of appropriate controls and without certain permits required by law, unlawful amounts of various pollutants have been, and continue to be, released into the atmosphere, aggravating air pollution locally and far downwind from the plant.

4

16.     An order from this Court directing Defendant to comply with applicable pollution limits, obtain the required permits, install modern pollution controls and demonstrate to the appropriate regulatory agencies that emissions from the EGS facility will not result in unlawful amounts of air pollution, will improve air quality for thousands of Wisconsin residents, including Sierra Club's members. It will also reduce illness and premature mortality and protect lakes and streams from further degradation due to the fallout from acid rain and mercury deposition.

17.     If Defendant complies with the Act, including applicable emission limits and the Prevention of Significant Deterioration ("PSD") program, 42 U.S.C. §§ 7470-7479, and the Nonattainment New Source Review ("NNSR") program, 42 U.S.C. §§ 7501-7515, the EGS plant will significantly decrease its annual air pollution emissions.

## PARTIES

18.     Plaintiff Sierra Club is an incorporated, not-for-profit organization with its headquarters at 85 Second Street, 2nd Floor, San Francisco, California, and its Wisconsin Chapter Office at 222 S. Hamilton St., Suite 1, Madison, WI 53703-3201. Its purpose is to preserve, protect, and enhance the natural environment. Its mission includes reducing and eliminating pollution from the mining, combustion, and waste disposal of coal, which negatively affects Sierra Club's members as well as members of the public. Sierra Club has over a million members and supporters nationwide, including over 10,000 members and supporters in Wisconsin.

19.     Sierra Club is a "person" within the meaning of 42 U.S.C. §§ 7602(e) and 7604(a).

5

20.     WPL is a corporation organized under the laws of Wisconsin. WPL is an investor-owned electric generation and distribution utility that is owned by Alliant Energy Corporation. WPL and Alliant Energy Corporation are headquartered and have their principal place of business in Madison, Wisconsin. The registered agent for WPL and Alliant Energy Corporation, as registered with the Wisconsin Department of Financial Institutions, is F.J. Buri, 4902 N. Biltmore Lane, Madison, Wisconsin.

21.     WPL is a "person" within the meaning of 42 U.S.C. §§ 7602(e) and 7604(a).

## STANDING

22.     Sierra Club has members who live, work, engage in other economic activity, garden and recreate around and downwind from the EGS plant. These members are impacted negatively by air pollution emissions from the plant. The health and welfare of Sierra Club's members, as well as their enjoyment of outdoor activities, has been and continues to be harmed by air pollution from the EGS plant.

23.     An order of this Court enjoining Defendant from operating the EGS plant, requiring it to comply with applicable pollution limits, and requiring Defendants to procure the required permits for the major modifications that have been made at the plant, will require significant decreases in air pollution. The reductions in air pollution will begin to redress the injuries to Sierra Club's members. Sierra Club members' injuries would also be redressed in part by any civil penalties awarded pursuant to 42 U.S.C. § 7604(a) and (g), including a beneficial mitigation project, and other required mitigation measures.

6

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction over the claims set forth in this complaint pursuant to 42 U.S.C. § 7604(a), 28 U.S.C. §§ 1331, 1355, and 2201.  The relief requested by the Plaintiff is authorized by statute in 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 7604.

25.     Venue is proper in this Court pursuant to 42 U.S.C. § 7604(c)(1) because this action is for violations at the EGS plant, which is located within the Eastern District of Wisconsin.

26.     No prior notice is required for certain claims set forth below for constructing without a permit.  42 U.S.C. § 7604(a)(3).  For the claims set forth below for violations of visible emission standards (opacity), Sierra Club gave notice pursuant to 42 U.S.C. § 7604(b) and 40 C.F.R. part 54 on or about December 21, 2009.  More than 60 days have passed since Plaintiff gave notice of this action to the Administrator of the United States Environmental Protection Agency (EPA), the State of Wisconsin and WPL.

## GENERAL ALLEGATIONS

27.     The Act requires that the EPA promulgate National Ambient Air Quality Standards (NAAQS), which are upper limits on air pollution in the ambient air, to protect public health and welfare, 42 U.S.C. § 7409.

28.     The Act also requires EPA to designate those areas within its boundaries where the air quality meets or exceeds NAAQS for each pollutant.  An area that meets the NAAQS for a particular pollutant is termed an "attainment" area, whereas an area that exceeds the NAAQS is

7

a "nonattainment" area. Areas for which there is insufficient information to determine compliance with NAAQS are "unclassifiable," 42 U.S.C. § 7407(d).

29.     The EGS plant is located in Sheboygan County, Wisconsin. At the times relevant to this complaint, Sheboygan County was classified as either "attainment" or "unclassifiable" for all pollutants except for 8-hour ozone. Sheboygan County was designated nonattainment for 8-hour ozone from 2004 through the present.

**The Wisconsin State Implementation Plan**

30.      The Wisconsin State Implementation Plan (SIP) has been approved by the EPA pursuant to the Clean Air Act and is incorporated into federal law by publication in the Federal Register and Code of Federal Regulations. *See e.g.*, 40 C.F.R. § 52.2569 *et seq.*

31.     The Wisconsin SIP also contains, and at all relevant times hereto contained, provisions implementing the Clean Air Act's Prevention of Significant Deterioration (PSD) Program. Different PSD regulations were adopted and applied at different times pursuant to the Wisconsin SIP. On June 19, 1978, EPA approved the Federal PSD program, 40 C.F.R. § 52.21 (b) through (v), into the Wisconsin SIP because Wisconsin had not submitted an approvable PSD program. 43 Fed. Reg. 26,410 (June 19, 1978) (codified at 40 C.F.R. § 52.2581). On August 19, 1980, EPA gave Wisconsin partial delegation to run the Federal PSD program, and on November 13, 1987, gave Wisconsin full delegation of the program, except for sources in Indian country. Pursuant to these delegations, the PSD program that applied in Wisconsin was the federal program at 40 C.F.R. § 52.21 and EPA was the ultimate permitting agency. However, the Wisconsin DNR had authority to issue permits on behalf of the EPA, subject to EPA's oversight.

8

32.     On May 27, 1999, EPA promulgated a final rule adopting Wisconsin's PSD program in Wis. Admin. Code ch. NR 405 into the Wisconsin SIP in place of the federal rules in 40 C.F.R. § 52.21.  64 Fed. Reg. 28,745 (May 27, 1999).  That rulemaking was effective on June 28, 1999.  *Id.*  On December 17, 2008, EPA promulgated a rule accepting certain revisions to the Wisconsin PSD program.  73 Fed. Reg. 76,560 (December 17, 2008).  Those revisions were effective January 16, 2009.  *Id.*[1]

33.     The Wisconsin State Implementation Plan also includes limitations on the density of smoke emitted from the EGS.  Those limits, based on visibility or "opacity" of smoke emissions, limit emissions from EGS Unit 3 to forty percent (40%) opacity or less, emissions from EGS Unit 4 to forty percent (40%) opacity or less (or to twenty percent (20%) or less if the plant was modified as set forth below), and emissions from EGS Unit 5 to twenty percent (20%) opacity or less.

34.     Wis. Admin. Code § NR 154.11 (1981) was adopted into the Wisconsin SIP in 1983 and prohibits any person, including WPL, from causing, suffering, allowing or permitting emissions into the air from any direct or portable source in excess of the following relevant limits:

       a.   Twenty percent (20%) opacity on direct and portable emission sources on which construction or modification is commenced after April 1, 1972, except for up to three times per day when a new fire is being started or when combustion equipment is being cleaned, during which times emissions may not exceed eighty percent (80%) opacity for more than 5 minutes. (Renumbered at  Wis. Admin. Code § NR 431.05).

       b.   Forty percent (40%) opacity for direct and portable sources on which construction or modification last commenced on or before April 1, 1972,

---

[1] Sierra Club and Natural Resources Defense Council filed a petition for judicial review of EPA's December 17, 2008, action within the time provided by the Clean Air Act.  If the Seventh Circuit reverses and/or remands the December 2008 EPA action, the 1999 version of Wis. Admin. Code ch. NR 405 will apply.

9

except for up to three times per day when a new fire is being started or when combustion equipment is being cleaned, during which times emissions may not exceed eighty percent (80%) opacity for more than 5 minutes. (Renumbered at Wis. Admin. Code § NR 431.04(1)).

35.     Pursuant to the Wisconsin State Implementation Plan, if EGS Unit 4 was modified after April 1, 1972, as alleged below, the applicable limit is 20% opacity or less following commencement of the modification.

36.     The Wisconsin SIP requires WPL to continuously monitor visible emissions from its boilers by operating a continuous opacity monitor. *See* Wis. Admin. Code § NR 439.095(1)(a) and (f), (5)(a)1.

37.     The Wisconsin SIP, in Wis. Admin. Code Chapter NR 440, and 40 C.F.R. § 50.42Da also limit opacity from EGS Unit 5 to 20% opacity, except for one period per hour where opacity can be no greater than twenty-seven percent (27%).

38.     Permits issued by the Wisconsin Department of Natural Resources to the EGS, pursuant to the Wisconsin SIP, including 460033090-P10, 460033090-P20 and Permit 07-SDD-254 also limit emissions from EGS Units 3 and 4 to 40% opacity and from EGS Unit 5 to 20% opacity.

**The Prevention of Significant Deterioration Program**

39.     Under the Clean Air Act's PSD program and Wisconsin's SIP, a new major source of air pollution cannot be constructed, and an existing major source of air pollution cannot undergo a "major modification," without a permit. *See* 42 U.S.C. §§ 7475(a) (prohibiting the construction of a major emitting facility without PSD review, issuance of a PSD permit, and imposition of BACT limits) and 7479(2)(C) ("construction" includes the "modification" of a source or facility); 40 C.F.R. § 52.21; Wis. Admin. Code § NR 405.07(1) (prohibiting the

10

construction or major modification of a major stationary source without PSD review and permitting). Therefore, any major stationary source in an attainment or unclassifiable area that intends to construct a "major modification" must first obtain a PSD permit.

40.     A "major modification" is "any physical change in or change in the method of operation of a major stationary source that would result in a significant emissions increase" of a regulated air contaminant.  40 C.F.R. § 52.21; Wis. Admin. Code § NR 405.02(21).  Included in the definition of "major source" are fossil fuel fired steam electric plants and fossil fuel fired boilers.  40 C.F.R. § 52.21; Wis. Admin. Code § NR 405.02(22)(a)(1).

41.     Pursuant to the PSD regulations applicable to pollution sources in Wisconsin for projects occurring prior to January 16, 2009, emissions increases are measured as the difference between the annual average emissions during the 24 months prior to the project and the plant's post-project "actual emissions."  40 C.F.R. § 52.21(b)(2), (3)(i), and (21) (1993); Wis. Admin. Code §§ NR 405.02(1), 405.02(24)(a) (1999).

42.     Post-project "actual emissions" are the emission source's potential to emit unless the source is an electric utility steam generating unit that meets certain monitoring and reporting requirements.  40 C.F.R. § 52.21(b)(21) (1993); Wis. Admin. Code § NR 405.02 (1) (1999).

43.     Prior to January 16, 2009, an electric utility steam generating unit could determine emission increases by comparing its pre-project annual "actual emissions" to its "representative actual annual emissions… *provided* the source owner or operator maintains and submits to the department, on an annual basis for a period of 5 years from the date the unit resumes regular operation, information demonstrating that the physical or operational change did not result in an emissions increase."  Wis. Admin. Code § NR 405.02(1)(d) (1999) (emphasis added); 40 C.F.R.

11

§ 52.21(b)(21)(v) (1993). This test, known as the "actual-to-projected-actual" test, is conditional. It only applies when the owner or operator complies with the monitoring and reporting requirements.

44. The EGS units are electric utility steam generating units because they are "constructed for the purpose of supplying more than one third of [their] potential electric output capacity and more than 25 MW electrical output to any utility power distribution system for sale." 40 C.F.R. §52.21(b)(31)(1999); Wis. Admin. Code § NR 405.02(11m).

45. WPL did not conduct the monitoring and reporting required under the regulations in effect before January 16, 2009, for WPL to apply the "actual-to-projected-actual" test for any of the changes set forth below that occurred at the EGS plants. Therefore, WPL's projects default to the actual-to-potential test to calculate emission increases from the projects.

46. However, even if the actual-to-projected-actual test applied, the projects resulted in a significant net emission increase of sulfur dioxide, nitrogen oxides, particulate matter, particulate matter less than 10 microns (PM10), particulate matter less than 2.5 microns (PM2.5), and other pollutants.

### The Nonattainment New Source Review Program

47. Wisconsin's Nonattainment New Source Review Program is adopted into the Wisconsin SIP at 40 C.F.R. § 52.2570(c)(75)(i). Certain changes to that program, including changes to incorporate the EPA's 2002 rule modifying the methods for calculating emission increases, were adopted into the Wisconsin SIP in December, 2008. 73 Fed. Reg. 76,560 (Dec. 17, 2008). Those revisions were effective January 16, 2009.

Case 2:10-cv-00835-AEG   Filed 09/24/10   Page 12 of 21   Document 1

48.     Any major stationary source in a nonattainment area for ozone that intends to construct a modification that will significantly increase emissions of nitrogen oxides must first obtain an NNSR permit, 42 U.S.C. §§ 7502(c)(5), 7503, 40 C.F.R. § 51.165, Appendix S, and Wis. Admin. Code § NR 408.02(20)(c), 408.03.

49.     A major modification in an ozone nonattainment area shall comply with lowest achievable emission rates ("LAER") for nitrogen oxides and must off-set increased emissions pursuant to 42 U.S.C. § 7503, 40 C.F.R. § 51.165 and part 51, appendix S, and Wis. Admin. Code § NR 408.04.

50.     Additionally, a major modification in an ozone nonattainment area must obtain enforceable emission decreases to "off-set" emissions from the modified facility on an annual basis.

51.     On December 14, 2009, the EPA issued a Notice and Finding of Violation to WPL and other utility companies pursuant to 42 U.S.C. § 7413(a).  In the Notice and Finding of Violation, EPA stated that it has determined that WPL and others are violating the Prevention of Significant Deterioration requirements of the Clean Air Act at the EGS plant and at other power plants in Wisconsin.  As of the date of this Complaint, the United States EPA has not commenced an action against WPL for the violations alleged herein.

**Modifications Made to the EGS Plant**

52.     In or about 2005, WPL replaced or installed part or all of the reheater section on EGS Unit 4.

53.     As part of the 2005 reheater project, or as a separate project at approximately the same time, WPL contracted with the Jamar Company to perform a reheat retrofit, including by

13

installing a new reheater in an existing boiler that did not previously have a reheater. The project included 65 new outlet elements.

54. The expenditure to replace or install the reheater on EGS in or about 2005 was treated by WPL as a capital expenditure.

55. The labor to replace or install the reheater on EGS in or about 2005 was provided by an outside contractor.

56. The materials and parts, including new reheater elements, installed during the project to replace or install the reheater on EGS in or about 2005 were manufactured by a vendor and provided for the project. The reheater elements that were installed were not from WPL's inventory of on-site spare parts.

57. The project to replace or install the reheater on EGS in or about 2005 was approved by management at WPL's main offices, rather than only by maintenance personnel at the EGS plant.

58. The project to replace or install the reheater on EGS in or about 2005 involved planning several months or more prior to commencing the project.

59. The project to replace or install the reheater on EGS in or about 2005 has not occurred on any of WPL's coal-fired boilers more than once or twice in the life of any single boiler.

### Lack of Permits, Monitoring, and Reporting and Failure to Comply With Emission Limits for Modifications to Plants.

60. WPL did not conduct the monitoring, recordkeeping and reporting provided for in 40 C.F.R. § 52.21(b)(21)(v) (1993) and Wis. Admin. Code §§ NR 405.02(1)(d), NR 408.02(1)(c)

(1999) to demonstrate "on an annual basis for a period of 5 years from the date the unit resumes regular operation" that the project to replace or install the reheater on EGS in or about 2005 identified did not "result in an emissions increase." Therefore, WPL is not entitled to use the post-project definition of "actual emissions" in 40 C.F.R. § 52.21(b)(21)(v) (1993) and Wis. Admin. Code §§ NR 405.02(1)(d) and NR 408.02(1)(c) and must, instead, calculate emission increases for the project pursuant to the "actual-to-potential" test. Under that test, each project resulted in a significant net emissions increase of sulfur dioxide ($SO_2$), nitrogen oxides (NOx), carbon monoxide (CO), particulate matter (PM), particulate matter less than 10 microns ($PM_{10}$), particulate matter less than 2.5 microns ($PM_{2.5}$), and other pollutants.

61.     Even based on a projection of future operations after each project (the "actual-to-projected-actual" test), each of the projects above resulted in a significant net emissions increase of $SO_2$, NOx, CO, PM, $PM_{10}$, $PM_{2.5}$ and other pollutants.

62.     WPL failed to obtain a permit pursuant to the PSD program, 42 U.S.C. § 7470 *et seq*, 40 C.F.R. § 52.21 and Wis. Admin. Code chs. NR 405 and NR 408, for the project to replace or install the reheater on EGS in or about 2005, either prior to construction or at any time since construction.

63.     WPL failed to comply with best available control technology limits required by 42 U.S.C. § 7475(a)(4), 40 C.F.R. § 52.21(j) and Wis. Admin. Code § NR 405.08 and the lowest achievable emission rates required by Wis. Admin. Code § NR 408.04(3) on and after the date of the project to replace or install the reheater on EGS, which was in or about 2005.

64.     WPL failed to conduct the analysis required by 40 C.F.R. §§ 52.21(k), (m) and (o) and Wis. Admin. Code §§ NR 405.11, NR 405.13, NR 408.07, and NR 408.08 of the impact

15

from the EGS plant's emissions for the project to replace or install the reheater on EGS in or about 2005.

65.     WPL failed to submit the information required to be submitted for major modifications pursuant to 40 C.F.R. § 52.21(n) and Wis. Admin. Code § NR 405.12 for the project to replace or install the reheater on EGS in or about 2005.

### FIRST CLAIM

(Major Modification Without a PSD Permit)

66.     Paragraphs 1 through 65 are incorporated herein by reference.

67.     On at least one occasion, and likely at various other times, WPL undertook one or more major modifications, each affecting one or more of the boilers and associated equipment at the EGS plant. Each such major modification was a physical change or change in method of operation which resulted in significant net emission increases, as defined by 40 C.F.R. § 52.21(b) and Wis. Admin. Code §§ NR 405.02(24), (27), of one or more pollutants, including sulfur dioxide carbon monoxide, particulate matter, $PM_{10}$, sulfuric acid, nitrogen oxides and mercury. Such major modifications include the project to replace or install the reheater on EGS in or about 2005.

68.     WPL continues to violate Section 165(a) of the Act, 42 U.S.C. § 7475(a), and the PSD regulations set forth in the Wisconsin SIP, Wis. Stat. § 285.60, *et seq.*, and Wis. Admin. Code ch. NR 405, by, *inter alia*, its ongoing failure to obtain the required PSD permits for major modifications to the EGS plants.

69.     Based upon the foregoing, WPL has violated and continues to violate Section 165(a) of the Act, 42 U.S.C. § 7475(a), 40 C.F.R. § 52.21, Wis. Stat. § 285.60 and Wis. Admin.

16

Code ch. NR 405. Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act are and will be ongoing.

70. Sierra Club has a claim for each such violation pursuant to 42 U.S.C. § 7604(a)(3).

## SECOND CLAIM

(Major Modification Without a Nonattainment New Source Review Permit)

71. Paragraphs 1 through 65 are incorporated herein by reference.

72. On at least one occasion, and likely at various other times, WPL undertook one or more major modifications, each affecting one or more of the boilers and associated equipment at the EGS plant. Each such major modification was a physical change or change in method of operation which resulted in significant emission increases, as defined by 40 C.F.R. § 51.165, Appendix S, and Wis. Admin. Code § NR 408.02, of one or more pollutants, including ozone, which is regulated through emissions of nitrogen oxides, a precursor to ozone. Such major modifications include the project to replace or install the reheater on EGS in or about 2005.

73. WPL continues to violate 42 U.S.C. §§ 7502(c)(5), 7503, 40 C.F.R. § 51.165, Appendix S, and Wis. Admin. Code §§ NR 408.02(20)(c), 408.03, by, *inter alia*, its ongoing failure to obtain the required Nonattainment New Source Review permits for major modifications to the EGS plants.

74. Based upon the foregoing, WPL has violated and continues to violate 42 U.S.C. §§ 7502(c)(5), 7503, 40 C.F.R. § 51.165, Appendix S, and Wis. Admin. Code §§ NR 408.02(20)(c), 408.03. Unless restrained by an order of this Court, these and similar violations of the Nonattainment New Source Review provisions of the Act are and will be ongoing.

17

75.     Sierra Club has a claim for each such violation pursuant to 42 U.S.C. § 7604(a)(3).

### THIRD CLAIM

(Violations of Opacity Limitations)

76.     Paragraphs 1 through 65 are incorporated herein by reference.

77.     On numerous occasions since at least 2006 the smoke emitted from the EGS boilers violated limits on visible emissions, which are expressed as limits on opacity, set forth in the applicable permits, 40 C.F.R. § 60.42Da, and the Wisconsin SIP.

78.     Each six-minute period where the average opacity exceeded any applicable limit for that time and boiler constitutes a separate and distinct violation.  One such six-minute period simultaneously constitutes a violation of each applicable permit, of the Wisconsin SIP, and for EGS Unit 5, of 40 C.F.R. § 60.42Da(b).

79.     Sierra Club has a claim for each such violation pursuant to 42 U.S.C. § 7604(a)(1) and (3).

### FOURTH CLAIM

(Declaratory Relief)

80.     Paragraphs 1 through 79 are incorporated herein by reference.

81.     Pursuant to 28 U.S.C. §§ 2201 and 2202, Sierra Club is entitled to a declaration that WPL violated and is in violation of the Clean Air Act by commencing one or more major modifications of the EGS plant without first obtaining the required permits, that the EGS is a modified source for purposes of the PSD and Nonattainment New Source Review programs, that the emission sources at the EGS are subject to best available control technology limits and/or

18

lowest achievable emission rate limits, and such further necessary or proper relief as may be granted by the Court.

## PRAYER FOR RELIEF

WHEREFORE, based upon the foregoing, the Sierra Club requests that this Court:

1.      Permanently enjoin WPL from operating the EGS, including the construction of future modifications, except in accordance with the Clean Air Act and any applicable regulatory requirements;

2.      Order WPL to apply for and obtain permits that are in conformity with the requirements of the PSD provisions of the Clean Air Act for each modification which WPL commenced without first obtaining a PSD permit;

3.      Order WPL to remedy its past violations by, *inter alia,* requiring WPL to install, as appropriate, the necessary pollution controls to meet best available control technology emission limits and/or lowest available emission rate limits;

4.      Order WPL to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Clean Air Act alleged above;

5.      Order WPL to conduct audits of its operations to determine if any additional modifications have occurred which would require it to meet the requirements of PSD and/or Nonattainment New Source Review and to report the results of these audits to Sierra Club, the United States Environmental Protection Agency, and the Wisconsin Department of Natural Resources;

19

6.	Order WPL to pay civil penalties of $25,000 to $37,500 per day for each separate violation of the Clean Air Act, 42 U.S.C. § 7604(g); 40 C.F.R. § 19.4; 74 Fed. Reg. 626 (Jan. 7, 2009), including a beneficial mitigation project pursuant to 42 U.S.C. § 7604(g)(2) in an area that reduces air pollution impacts to Sierra Club's members;

7.	Order WPL to pay Sierra Club's costs of this case, including reasonable attorneys' fees and expert fees, pursuant to 42 U.S.C.7604(d);

8.	Declare that WPL was required to obtain a PSD and/or Nonattainment New Source Review permit for major modifications to the EGS plant;

9.	Declare that the EGS is a modified sources for purposes of the Clean Air Act PSD and Nonattainment New Source Review program;

10.	Declare that the EGS is subject to best available control technology limits and lowest achievable emission rate limits; and

11.	Award any other relief that the Court finds just and equitable.

Dated: September 23, 2010

MCGILLIVRAY WESTERBERG & BENDER LLC

 s/ David C. Bender

David C. Bender
Christa O. Westerberg
Pamela R. McGillivray
305 S. Paterson Street
Madison, WI 53703
Tel. 608.310.3560
Fax 608.310.3561
Email: bender@mwbattorneys.com
westerberg@mwbattorneys.com
mcgillivray@mwbattorneys.com


*Attorneys for the Plaintiff Sierra Club*